# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BILLY CANNON**,

Plaintiff,

v.                                              **Case No. 16-cv-10-pp**

**JASON ALDANA, et al.,**

Defendants.

## DECISION AND ORDER SCREENING, AND DISMISSING, COMPLAINT (DKT. NO. 1)

The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated a number of his civil rights in response to his filing requests for two John Doe investigations. Dkt. No. 1. The plaintiff paid the full filing fee of $400 on January 4, 2016. Below, the court screens the plaintiff's complaint.

### Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

1

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and her statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## Allegations in the Plaintiff's Complaint

The plaintiff alleges the defendants engaged in an "elaborate scheme" to, among other things, deny him access to the courts and to retaliate against him for exercising his First Amendment rights. Dkt. No. 1 at 18. Specifically, the plaintiff claims that in September 2012, pursuant to Wis. Stat. §968.26, he filed with Chief Judge Jeffrey Kremers of the Milwaukee County Circuit Court[1] two John Doe petitions, asking Judge Kremers to investigate (1) Michael Guolee (Milwaukee County Circuit Court Judge), and (2) Dean Newport (Milwaukee Police Officer), Michael Kurowski (of the Milwaukee Police Department), Timothy Gray (Special Agent with the Wisconsin Department of Justice), John Chisholm (Milwaukee County District Attorney), Grant Hubener (Assistant

---

[1] At the time of the events alleged in the plaintiff's complaint, Judge Jeffrey Kremers was the Chief Judge of the Milwaukee County Circuit Court. That has changed; as of August 1, 2015, Judge Maxine A. White has succeeded Judge Kremers as Chief of the Milwaukee County Circuit Court. For the purposes of this order, the court will refer to Judge Kremers as "Chief Judge," because that was his position at the time of the events the plaintiff describes.

3

District Attorney), and Jeremiah Van Hecke (Assistant District Attorney). Dkt. No. 1 at 13. The plaintiff states that Judge Kremers and his clerk are the only ones that maintain the John Doe files. Id. at 13.

The plaintiff alleges that Judge Kremers notified Chisholm of the petition against him, which was improper under the statute. Id. The plaintiff also alleges that Chisholm notified Hubener and Van Hecke, who notified Newport, Kurowski, and Gray. Id. The plaintiff maintains that Newport, Kurowski, and Gray then asked Jason Aldana, the Security Director at the Racine Correctional Institution ("RCI"), "to confiscate all of plaintiff's legal material[s] for their criminal investigation." Id. The plaintiff alleges the defendants sought to "destroy the evidence and exhibits of the John Doe Petition." Id. at 13.

The plaintiff alleges that on October 10, 2012, at Aldana's direction, RCI staff confiscated all of the plaintiff's "legal material[s], legal files, photos, incoming and outgoing mail, and any other paper documents." Id. at 19. Newport allegedly took "everything that he thought would be detrimental to the John Doe Defendants including himself" and returned the remaining materials to "Aldana with a thank you letter on government letterhead claiming to be an ATF agent." Id. at 14. Aldana returned the remaining materials to the plaintiff on October 15, 2012. Id. at 20. The plaintiff indicates that the materials Newport took were "the original two John Doe Petitions, the unopened certified mail to various judges, judicial commission, certified notary documents to the internal affairs with the MPD regarding the misconduct of said defendants, letters from Tammy Baldwin, among other legal documents." Id. at 14-15. The

4

plaintiff does not indicate whether Newport ever returned these materials, but the plaintiff contends that he kept copies of everything that was taken.

The plaintiff maintains that he had not had any contact with Newport for nearly two years, "so the lie told to the institution about him conducting a criminal investigation was to manipulate the institution . . . ." Id. at 15. The plaintiff claims that Newport and others used subterfuge to obtain his legal materials and transformed Aldana into a "stalking horse." Id. at 17.

On October 26, 2012, Judge Kremers declined to open a John Doe investigation against Judge Guolee, and on November 16, 2012, declined to open an investigation into the others. Id. at 15. The plaintiff argues that these dismissals were improper. Id. at 15-16.

<u>Analysis of the Plaintiff's Allegations</u>

As a threshold matter, the court notes that the plaintiff purports to sue the defendants in both their personal and official capacities. The distinction between personal capacity and official capacity is significant. "Personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law. . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Hill v. Shelander</u>, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting <u>Kentucky v. Graham</u>, 473 U.S.159, 166 (1985)). In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. <u>Id</u>. On the other hand, an official-capacity suit is appropriate only when an individual is

executing or implementing the official policy or custom of a government entity. Id. The plaintiff's allegations do not indicate or imply the existence of an official policy or custom. Instead, the plaintiff alleges that each defendant acted on his or her own to deprive the plaintiff of his constitutional rights. Accordingly, the plaintiff has not stated claims against any of the defendants in their official capacities.

Next, the court notes that on pages 6-7 of his complaint, the plaintiff has named as defendants Edward Wall (the Secretary of the Wisconsin Department of Corrections, Dkt. No. 1 at 12), John Paquin (warden of the Racine Correctional Institution, Dkt. No. 12), Audrain Brown (whom the plaintiff identifies as a "Unit Manager at the Racine Correctional Institution," Dkt. No. 1 at 12), Nancy Padgett (whom the plaintiff identifies as an inmate complaint examiner at Racine Correctional, Dkt. No. 1 at 12), and Michael Tobin (whom the plaintiff identifies as a "Fire and Police Commissioner for the City of Milwaukee, Dkt. No. 1 at 11). Dkt. No. 1 at 6-7.

As explained by the Seventh Circuit Court of Appeals, "[a] plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003). Merely "ruling on a grievance does not make the actor personally responsible—it 'does not cause or contribute to the violation.'" George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). With regard to these defendants, the plaintiff alleges only that he complained to them—informally, via written complaint, or via the inmate complaint process—about the

6

misconduct of officers and/or the removal of his legal materials and that he received either no response or responses he deemed unsatisfactory. He does *not* allege that any of these defendants were involved in the alleged misconduct or the removal of his legal materials. His failure to allege the personal participation of these defendants in the allegedly unconstitutional actions is fatal to his claims against them. The court will dismiss defendants Wall, Pacquin, Brown, Padgett and Tobin.

The plaintiff also makes claims against Milwaukee County Circuit Court Chief Judge Jeffrey Kremers. His allegations against Judge Kremers relate directly to Judge Kremers' job as a judge. He argues that a judge, Judge Kremers was the recipient of requests for John Doe investigations, and was the keeper of those requests. He argues that Judge Kremers violated his rights by notifying the Milwaukee County District Attorney, John Chisolm, of the plaintiff's requests to open John Doe investigations, and in so doing, opened the door for other defendants (particularly the defendants whom he named in the John Doe petitions, including defendant Chisholm) to retaliate against the plaintiff.

"A judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction." Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011). In this case, Judge Kremers had direct statutory jurisdiction to refer any allegations of criminal wrong-doing to a district attorney. Wis. Stat. §968.26(2)(am) states, "If a person who is not a district attorney complains to a judge that he or she has reason to believe that a crime has been committed

7

within the judge's jurisdiction, the judge shall refer the complaint to the district attorney . . . ." Thus, in referring the plaintiff's complaints to a district attorney, Judge Kremers was doing exactly what the statute required him to do, and thus was acting within his jurisdiction.

The plaintiff argues, however, that Judge Kremers should not have referred his John Doe petitions to District Attorney Chisholm, because District Attorney Chisholm was one of the individuals whom the plaintiff alleged had committed crimes, and one of the individuals whom the plaintiff was asking Judge Kremers to have investigated. It is true that Wis. Stat. §968.26(am) provides that if the complaint the judge receives "may relate to the conduct of the district attorney," the judge should refer the complaint "to another prosecutor under s. 978.045." Wis. Stat. §978.045 allows a judge to appoint a special prosecutor when, among other things, the judge receives a John Doe complaint that "relates to the conduct of the district attorney to whom the judge otherwise would refer the complaint."

The plaintiff's allegation that Judge Kremers wrongly referred a complaint against DA Chisholm to DA Chisholm does not have any impact on whether Judge Kremers had jurisdiction to make the referral. He did have jurisdiction to make the referral. As a result, Judge Kremers did not act "in the absence of all jurisdiction," Polzin, 636 F.3d at 838, and while the plaintiff alleges that he exercised that jurisdiction in error,[2] Judge Kremers has

_____

[2] This court expresses no opinion on whether Judge Kremers actually made any error. While the plaintiff submitted seventy-four pages of attachments with his complaint, he did not submit copies of the alleged John Doe petitions. While he

8

absolute immunity for the actions about which the plaintiff complains. The court will dismiss Judge Kremers as a defendant.

The plaintiff alleges that defendant Daniel Layber was "a Special Agent Supervisor with the Department of Justice." Dkt. No. 1 at 11. The plaintiff alleges that, after he filed a complaint with the Wisconsin Department of Justice about Newport, Gray, and Kurowski, he "notified the clerk/secretary for an update, because the justice department had forwarded the complaint back to Gray's supervisor Daniel Layber (Protocol)." Id. at 16. He indicates that this clerk or secretary instructed him that protocol required that the plaintiff contact Layber, Gray's supervisor. Dkt. No. 1 at 16. The plaintiff states that when he spoke with Layber, Layber said, "if one of my agents have [sic] done something wrong th[e]n I would like to know about it." Id. at 17. The plaintiff alleges that Layber did nothing in response to the plaintiff's complaint, and that he never heard from Layber again. Id.

The allegations stated against Layber are insufficient to support the plaintiff's claim that Layber was personally involved in the alleged constitutional violations. The plaintiff appears to argue that Layber, as Gray's supervisor, violated his civil rights by not taking some kind of supervisory action against Gray. Section 1983, however, does not provide a cause of action

---

attached his cover letter to Judge Kremers, dated October 3, 2012. Dkt. No. 1-1 at 1, that letter does not identify the subjects whom the plaintiff wanted investigated. It indicates only that the plaintiff was seeking an investigation "for the named officials in the motion." Id. The only indication this court has that the plaintiff asked Judge Kremers to investigate John Chisholm is the plaintiff's statement in the complaint that he did so, and the court need not, and cannot, make any finding, based solely on that assertion, that Judge Kremers failed to follow the procedures outlined in the Wisconsin statutes.

against people based on their supervisory roles. T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010). The court will dismiss Daniel Layber as a defendant.

The plaintiff alleges that Jason Aldana was the security director at the Racine Correctional Institution. Dkt. No. 1 at 12. He claims that Aldana was a "stalking horse" who was used by Newport to seize his legal materials so that Newport, Kurowski, Gray, Chisholm, Hubener and Van Hecke could gain access to the evidence supporting the plaintiff's John Doe petitions. The plaintiff alleges that Newport misrepresented to Aldana that Newport was an ATF agent (when, in fact, the plaintiff claims, Newport was a Milwaukee Police Officer), and told Aldana that the plaintiff's legal materials were needed for a criminal investigation.

The plaintiff does not allege that his John Doe petitions involved Aldana, that Aldana viewed any of the seized materials, or that Aldana had any motivation to seize the materials other than to assist Newport in what Aldana apparently believed was Newport's criminal investigation. The plaintiff essentially alleges that Aldana was duped into doing what the plaintiff claims was Newport's dirty work.[3] At the very most, this claim alleges that Aldana may have been negligent for failing to verify Newport's identity and/or the existence of a criminal investigation. Negligence is not sufficient to state a claim under

---

[3] The court believes that, in using the term "stalking horse" to describe Aldana, the plaintiff perhaps means to describe a "cat's paw." The idiom "cat's paw" is often used to describe a person who is used by someone else as a tool or a dupe. In contrast, "stalking horse" is an idiom used to describe someone who is willing to act as a test subject of sorts, to test a concept or mount a challenge on behalf of someone else.

10

§1983, see Daniels v. Williams, 474 U.S. 327, 333-34 (1986), and thus, the court dismisses Jason Aldana as a defendant.

The court now turns to each of the plaintiff's claims against the remaining defendants: Newport, Kurowski, Gray, Chisholm, Hubener, and Van Hecke (collectively referred to as the "Petition Defendants").

In his first cause of action, the plaintiff claims that the Petition Defendants violated his First Amendment right to freedom of speech and his Fourteenth Amendment right to access to the courts. With regard to his access to courts claim, the plaintiff argues that the Petition Defendants violated his rights by seizing his legal materials, including exhibits to and evidence in support of the John Doe petitions.

"The Fourteenth Amendment guarantees meaningful access to courts . . . ." Guajardo-Palma v. Martinson, 622 F. 3d 801, 802 (7th Cir. 2010). It does so, in part, by prohibiting the active interference by prison officials with a prisoner's efforts to enforce his legal rights. Id. at 803. The Seventh Circuit has noted that some federal courts of appeal have found that prisoners may have an access-to-courts claim when prison officials read their confidential communications with their attorneys. Id. at 802. Even if the Petition Defendants did everything the plaintiff claims that they did, however, the plaintiff has not stated an access-to-courts claim against them.

First, none of the Petition Defendants were prison officials. The plaintiff alleges that Newport and Kurowski were Milwaukee police officers, that Chisolm was the Milwaukee County District Attorney, that Huebner and Van

Hecke were assistant district attorneys, and that Gray was a special agent with the Department of Justice. As indicated above, case law defining access-to-justice claims indicates that the Fourteenth Amendment focuses, for the most part, on prohibiting *prison officials* from interfering with an inmate's ability to access the courts.

Second, even if an access-to-courts claim can lie against government actors who are not prison officials, a request for a John Doe investigation is not an effort by a plaintiff to enforce his legal rights. Pursuant to Wis. Stat. §968.26, an individual who is not a district attorney may make a complaint to the district attorney, alleging that the person believes that a crime has been committed, and asking the district attorney to conduct a John Doe investigation. The statute provides that only the district attorney has the authority to issue charges, and only the district attorney or a judge may convene an investigation into allegations of criminal activity. See Wis. Stat. §§968.26(1m), (2)(am), and 2(b). The statute does not give an civilian (a person who isn't a district attorney or a judge) any rights at all. The plaintiff does not have a right to have the district attorney conduct an investigation or issue charges. Nor does he have a right to have the court conduct an investigation. Because the plaintiff had no right to access to courts under the John Doe statute, and because none of the Petition Defendants were prison officials, the court will not allow him to proceed on his Fourteenth Amendment access-to-courts claim.

With regard to his First amendment claim, the plaintiff argues that the Petition Defendants retaliated against him. He argues that defendants Chisholm, Huebner and Van Hecke retaliated against him by informing Newport, Gray and Kurowski of the plaintiff's allegations, and that Newport, Gray and Kurowski retaliated by contacting Aldana and having him confiscate the plaintiff's files. He argues that, because the Petition Defendants were the people whom he alleged in his John Doe complaint had committed criminal acts, they engineered the seizure of his materials, not to actually conduct a John Doe investigation (as he'd asked), but to make sure no investigation ever took place.

> To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action."

Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The plaintiff has alleged that he engaged in activity protected by the First Amendment; the guarantee of freedom of speech protects the plaintiff's right to allege that he believed certain individuals had engaged in criminal activity. He also alleges that he suffered a deprivation—Aldana (whom the court has dismissed as a defendant) took his papers, books, magazines, mail and other items.

The court cannot find, however, that the plaintiff has alleged that the Petition Defendants were motivated by a desire to curb his free speech. The

13

plaintiff repeatedly alleges throughout the complaint that the reason the defendants had his mail seized was because they wanted to destroy any evidence of their alleged criminal wrong-doing. The plaintiff already had asked Judge Kremers to start a John Doe investigation by the time the defendants allegedly engineered the search, so the Petition Defendants could not have been trying to interfere with his right to allege that they engaged in criminal conduct. Rather, if the court accepts the plaintiff's allegations as true (as it does, at this stage), the Petition Defendants seized the documents to protect themselves, to keep their alleged criminal conduct from coming to light. While the plaintiff's allegations, if supported, may provide the basis for claims of some kind of misconduct, they do not support a claim that the Petition Defendants violated his First Amendment right to free speech through retaliation.

The plaintiff's First Amendment claim also may encompass his claim that the Petition Defendants took action which resulted in his mail (incoming, outgoing and certified) being seized. The plaintiff alleges that "Newport was reading and copying legal material that was sent to plaintiff from federal and state judges." Dkt. No. 1 at 22. He also alleges that the Petition Defendants "joined together to confiscate all of the plaintiff['s] legal mail, to read the contents . . . ." Dkt. No. 1 at 26.

The Supreme Court has held that a "correspondent" with an inmate may have a First Amendment right against a prison censoring the inmate's mail, when that censoring is "not necessary to protect legitimate government

14

interests." Wolff v. McDonnell, 418 U.S. 539, 575 (1974). The Court did not go so far in Wolff, however, as to recognize a *prisoner's* First Amendment right against censorship. Id. (internal citations omitted). The Seventh Circuit has opined that, "since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas," a prisoner's allegation that prison officials opened and read his mail relates more to a Fourteenth Amendment access to courts or due process claim than it does to a First Amendment claim. Guajardo-Palma v. Martinson, 622 F.3d 801, 802 (7th Cir. 2010).

Because the plaintiff does not have any clear First Amendment right to be free from having his mail read, the court will not allow the plaintiff to proceed on that cause of action.

In his second cause of action, the plaintiff alleges that Aldana, at the direction of Newport, illegally searched the plaintiff's cell and seized his legal materials in violation of the Fourth Amendment, and that they engineered this search by means of subterfuge. The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." Hudson v. Palmer, 468 U.S. 517, 526 (1984). For this reason, the court will not allow the plaintiff to proceed on his Fourth Amendment claim.

In his third cause of action, the plaintiff claims that the Petition Defendants conspired to interfere with his Sixth Amendment right to counsel. It appears that the plaintiff bases this claim on his allegation that the Petition Defendants took his legal mail, and thus interfered with his ability to communicate with his lawyer. He also alleged that for prison officials, police, prosecutors or judges to read mail between a prisoner and his criminal counsel violates the Sixth Amendment.

The plaintiff attached to his complaint the documents that Aldana seized, then returned to him. Dkt. No. 1-1. These documents, however, do not include any communications between the plaintiff and his criminal counsel written *before* Aldana seized the plaintiff's papers. There is a letter among the documents from the plaintiff's attorney to the plaintiff, but it is dated *after* the Petition Defendants allegedly removed his legal materials. See Dkt. No. 1 at 20; Dkt. No. 1-1 at 33.

Even if the Petition Defendants had taken letters between the plaintiff and his criminal lawyer (letters which related to the plaintiff's defense in a criminal case), the plaintiff has made no allegations that his lawyer was not able to provide him with effective assistance of counsel, as the Sixth Amendment requires. The plaintiff alleges that the Petition Defendants shouldn't have taken the letters, and that officials such as the Petition Defendants should not read privileged communications between clients and lawyers. But nowhere does he state that his lawyer was not able to adequately represent him in his criminal case because of the Petition Defendants' alleged

actions. "[T]he Supreme Court made clear in <u>Weatherford v. Bursey</u>, 429 U.S. 545, 554-59 . . . (1977), that the interception of a criminal defendant's confidential communications with his lawyer is subject to harmless-error analysis; and this must be true, and is, in prisoners' civil litigation as well." <u>Guajardo-Palma</u>, 622 F. 3d at 805-06. Without a factually-supported allegation that his lawyer was not able to represent him as a result of the Petition Defendants' actions, the plaintiff's Sixth Amendment claim constitutes harmless error.

If the plaintiff meant to argue that he had a Sixth Amendment right to have a lawyer assist him in trying to obtain a John Doe investigation, he is incorrect. The Sixth Amendment guarantees a person's right to counsel only in criminal proceedings against that person. <u>See</u> <u>Maine v. Moulton</u>, 474 U.S. 159, 168-70 (1985). The plaintiff was not constitutionally entitled to have counsel assist him with requesting a John Doe investigation. The court will not allow the plaintiff to proceed on his Sixth Amendment claim.

In the fourth cause of action, the plaintiff again alleges that his Fourth Amendment rights were violated when his cell was searched; the court already has ruled that he may not proceed on that claim. He also alleges that the Petition Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment when RCI staff took his legal materials. The plaintiff does not state any facts to support this claim. Rather, he argues that the Supreme Court has held that prisoners may bring Eighth Amendment claims if their cells are searched in a "particularly egregious manner." Dkt. No. 1 at 27.

17

(The plaintiff does not provide the name of the Supreme Court case upon which he relies, or the citation.)

The plaintiff fails to state a claim—he does not allege that anyone used force, physical or psychological, against him during the search. To the contrary, he asserts that, at his request, he was allowed to speak with multiple officers and supervisors prior to the search occurring; he was permitted the opportunity to inventory his materials before the officers removed them from his cell; and he was given the opportunity to inspect the returned materials in the presence of a supervisor. None of the plaintiff's allegations regarding the RCI staff's conduct indicate that the plaintiff's Eighth Amendment rights were violated, and the court will not allow him to proceed on his Eighth Amendment claim.

In his fifth cause of action, the plaintiff alleges that the Petition Defendants violated his rights under the Fourteenth and Fifth Amendments, his due process rights, and his right to equal protection. He states no facts at all whatsoever in support of this claim; the text of his claim is just a recitation of all the rights he claims the Petition Defendants violated. The court already has ruled on his Fourteenth Amendment due process claim. The court has no idea what portion of the Fifth Amendment the plaintiff believes the Petition Defendants violated; the Fifth Amendment provides several protections, including the right to be charged by a grand jury, the protection against double jeopardy, the right against compelled incrimination, and others. Without any explanation of how the plaintiff believes the Petition Defendants violated his

Fifth Amendment rights, the court will not allow him to proceed on a Fifth Amendment claim.

With regard to his statement that the defendants violated his right to equal protection, the court notes that in order to state an equal protection claim under the Fourteenth Amendment, a plaintiff must allege that a state actor intentionally treated him differently than others who were similarly situated. DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000). Nowhere in the complaint does the plaintiff allege facts indicating that he was treated differently than any similarly-situated person. In addition, the plaintiff repeatedly states that the Petition Defendants' motivation for taking his legal materials was their desire to obtain and destroy the evidence supporting the plaintiff's John Doe petitions, not an effort to discriminate against him for some reason. According to the plaintiff's own allegations, the defendants' actions were not motivated by any characteristic of his that might give rise to an equal protection claim.

The plaintiff's sixth cause of action alleges conspiracy among Tobin, Wall, Padgett, Brown, Paquin and Layber; the court already has dismissed these individuals as defendants.

While the plaintiff does not make these specific allegations in any of the above-described six causes of action, the plaintiff alleges at various points in his complaint that the Petition Defendants deprived him of his property without due process. The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not implicated by an intentional deprivation where

the state provides a meaningful post-deprivation remedy for the loss. See

Hossman v. Spradlin, 812 F.2d 1019, 1022-23 (7th Cir. 1987). Wisconsin law

provides tort remedies to individuals whose property has been converted or

damaged by another. See Wis. Stat. §§893.35 and 893.51. Because state law

provides an adequate post-deprivation remedy for redressing the missing

property, the plaintiff's due process rights remain intact. Parratt v. Taylor, 451

U.S. 527, 540 (1981), overruled in part on other grounds by Daniels v.

Williams, 474 U.S. 327 (1986); see also Hamlin v. Vaudenberg, 95 F.3d 580,

585 (7th Cir. 1996) (holding that Wisconsin's post-deprivation procedures are

adequate, albeit in a different context). The court will not allow him to proceed

on this due process claim.

     Finally, in each cause of action, the plaintiff alleges that the defendants

named in that cause of action conspired to violate his constitutional rights.

Conspiracy, however, is not an independent basis of liability in §1983 actions;

there must be an underlying constitutional violation. Cefalu v. Vill. of Elk

Grove, 211 F.3d 416, 423 (7th Cir. 2000). The court has found that the plaintiff

fails to allege any violations of his constitutional rights. Accordingly, the court

will not allow him to proceed on his conspiracy claim.

Conclusion

     The court **ORDERS** that this case is **DISMISSED** pursuant to 28

U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

The court further **ORDERS** that the Clerk of Court document that this inmate has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

The court also **ORDERS** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight (28) days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

The court will mail a copy of this order to the institution where the plaintiff is incarcerated.

Dated in Milwaukee, Wisconsin this 19th day of January, 2016.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**