UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BILLY CANNON,

                Plaintiff,

v.                                             Case No. 16-cv-10-pp

DEAN NEWPORT,

                Defendant.

---

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 33), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 39), AND DENYING PLAINTIFF'S MOTION TO SUPPLEMENT PLEADINGS (DKT. NO. 62)**

---

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendant had violated his constitutional rights. On November 14, 2016, the defendant filed a motion for summary judgment. Dkt. No. 33. That same day, the plaintiff filed his own motion for summary judgment. Dkt. No. 39. For the reasons discussed below, the court will grant the defendant's motion and deny the plaintiff's motion.

I.     **RELEVANT FACTS**[1]

On March 15, 2016, the court issued a screening order, allowing the plaintiff to proceed on only one claim: a "First Amendment retaliation claim

---

[1] The court takes the facts from the "Proposed Findings of Fact by Dean Newport," dkt. no. 34; the plaintiff's "Response" to the defendant's proposed findings of fact, dkt. no. 43; the plaintiff's "Supplement" to his proposed findings of fact, dkt. no. 55; and the defendant's "Response" to the plaintiff's supplement, dkt. no. 58. The facts are undisputed unless otherwise noted.

1

against Dean Newport." Dkt. No. 8 at 9. That claim relates to the plaintiff's allegation that the defendant retaliated against him when the defendant orchestrated a search of the plaintiff's cell and seized the plaintiff's legal records, after learning that the plaintiff had attempted to initiate a John Doe investigation against him in state court. Both parties provided the court with a good deal of information that is irrelevant to that claim; the court recounts below only those facts relevant to that claim.

In 2008, defendant Milwaukee Police Officer Dean Newport was assigned to a joint task force involving the Milwaukee Police Department and the Wisconsin Department of Justice. Dkt. No. 34 at ¶1. In 2011, the defendant was deputized as a federal task force officer with the Bureau of Alcohol Tobacco and Firearms. Id. at ¶13.

Information obtained by the task force led the task force to the plaintiff. Id. at ¶4. On March 20, 2009, the Milwaukee County District Attorney's Office filed a complaint against the plaintiff. State v. Cannon, Case No. 2009CF001337, available at https://wcca/wicourts.gov, id. at ¶5 ("the 2009 case"). The case was assigned to Milwaukee County Circuit Court Judge Michael Guolee. Id. at ¶6.

On February 24, 2011, while the 2009 case was pending, the District Attorney's Office filed another compliant against the defendant. State v. Cannon, Case No. 2011CF000924, available at https://wcca/wicourts.gov ("the 2011 case"). This case, too, was assigned to Judge Guolee. Id. at ¶8. Both

cases resulted from the work of the joint task force. Id. at ¶9. The defendant indicates that because the 2011 case involved wiretap evidence, Judge Guolee ordered the record sealed at the outset of the case. Id. at ¶12.

Sometime during the pendency of the 2009 case, the plaintiff began a sexual relationship with Judge Guolee's court clerk, Tammy Baldwin. Id. at ¶14. Ms. Baldwin had access to the court's files for both the 2009 and 2011 cases, including documents that had been filed under seal. Id. at ¶15.

On March 23, 2012, the plaintiff entered a guilty plea in the 2009 case. Id. at ¶16. Judge Guolee sentenced the plaintiff to a two-year term of confinement, followed by a two-year term of extended supervision. Id. at ¶17. In July 2012, the 2011 case was reassigned to another Milwaukee County Circuit Court judge. Id. at ¶18.

The defendant states that on October 3, 2012, the plaintiff sent four documents, under a cover letter, to Milwaukee County Circuit Court Chief Judge Jeffrey Kremers. Id. at ¶19. The first document, which bore no case number, was titled, "Notice of and Petitioner [sic] Seeking Secret 'John Doe' Investigation against Local Official Judge for Misconduct While Serving in Public Office." Id. at ¶20. The second document, which bore the caption of the 2009 case, was titled, "Petition for a 'John Doe' Investigation." Id. at ¶¶22, 23. In this document, the plaintiff argued that the court should vacate the

3

sentence imposed in the 2009 case.[2] Id. at ¶24. The plaintiff alleged that he and Judge Guolee both had been engaged in a sexual relationship with Ms. Baldwin, and that Judge Guolee had imposed the sentence out of jealousy. Id. at ¶25. The document also contained twenty exhibits—copies of letters and envelopes sent between the plaintiff and Ms. Baldwin. Id. at ¶¶26, 27. The letters evidenced a close, sexual relationship between the two, and demonstrated that Ms. Baldwin had been passing information from the court's chambers to the plaintiff. Id. at ¶¶27, 28.

The third document, which bore the caption of the 2011 case, was titled "Petition Seeking Secret John Doe Against Six Named Officials For Criminal Acts and Other Misconduct and Conspiracy While Serving as Law Officials and Officers of the Court." Id. at ¶¶29, 30. This document asserted that the defendant and others had violated the plaintiff's civil rights during their criminal investigation. Id. at ¶31.

The final document, which bore the caption of the 2009 case, was titled "Notice of Motion and Motion to Vacate Sentence." Id. at ¶¶32, 33. This motion repeated the plaintiff's allegations regarding his and Judge Guolee's rival

---

[2] The plaintiff asserts that he sent the two John Doe petitions in September 2012, not October 2012, although he agrees that he sent the cover letter and the motion to vacate (the fourth document) in October 2012. Dkt. No. 56 at ¶19. The date on which the plaintiff mailed the two John Doe petitions is irrelevant; the question at issue is whether the defendant was aware of the John Doe petitions at any point before he conducted the search of the plaintiff's cell.

4

relationship with Ms. Baldwin. Id. at ¶34. The motion did not mention the defendant, and it did not refer to a John Doe investigation. Id. at ¶35. Because the document was not marked confidential, the Milwaukee County Clerk's Office docketed it on October 5, 2012[3], docketing it in the 2009 case in accordance with its caption. Id. at ¶36; see State v. Cannon, Case No. 2009CF001337, available at https://wcca.wicourts.gov. dkt. entries 44-46.

The plaintiff argues that he did not *intend* for the Clerk's Office to docket the motion to vacate; he wanted the motion to be kept confidential. Dkt. No. 56 at ¶¶33, 35, 36.

As a result of the plaintiff's motion to vacate, the Milwaukee County District Attorney's Office and the Milwaukee County Clerk's Office opened investigations. Dkt. No. 34 at ¶37. The District Attorney's Office was concerned that Ms. Baldwin may have disclosed confidential, sealed documents to the plaintiff, including documents that could have identified confidential informants or jeopardized ongoing investigations. Id. at ¶40.

"Sometime in early October 2012," the District Attorney's Office chief investigator, David Budde, contacted the defendant, informed him of the fact that the plaintiff had been having a relationship with Ms. Baldwin, and asked

---

[3] The defendant's proposed finding of fact states that the document was docketed on October 5, *2016*. Dkt. No. 34 at ¶36. The court assumes that this is a typographical error; the document, which the defendant attached as an exhibit to the declaration of the defendant's counsel, bears a date stamp of October 5, *2012*. Dkt. No. 36-11.

5

for the defendant's help in investigating whether the plaintiff had received confidential information or documents from Ms. Baldwin. Dkt. No. 35 at ¶¶13-18. The defendant assumed that the reason Budde contacted him was because he was one of the lead investigators in the criminal case against the plaintiff, and thus could identify information that was confidential. Id. at ¶19. The defendant stated, under penalty of perjury, that no one ever informed him that the plaintiff had filed a petition to open a Doe investigation of him and other officers, and that he wasn't aware of that fact. Id. at ¶¶20-21. The plaintiff disputes the assertion that no one informed the defendant about the John Doe investigation, dkt. no. 56 at ¶¶43, 44, but he offers no evidence to support his claim that the defendant knew about the Doe petitions.

The defendant then e-mailed Deputy District Attorney Kent Lovern and asked whether he should conduct of a search of the plaintiff's cell in order to look for documents that Ms. Baldwin may have given the plaintiff. Dkt. No. 35 at ¶22. ADA Lovern responded, "Do it." Id. at ¶23. The plaintiff argues that this e-mail exchange occurred prior to the date the motion to vacate was docketed in the Milwaukee County Circuit Court, dkt. no. 56 at ¶¶45, 46, but again, he provided no evidence to support that assertion. The e-mail itself—which the plaintiff attached to his motion, dkt. no. 39-1 at 61—is undated.

The defendant contacted Jason Aldana, the head of security for Racine Correctional Institution, and requested a search of the plaintiff's cell for potential confidential information. Dkt. No. 35 at ¶¶24, 26. Aldana ordered a

6

search of the plaintiff's cell, and seizure of all documents. Id. at ¶29. Sometime in early to mid-October, the defendant drove to the institution to obtain the seized documents. Id. at ¶32. He discovered, when he arrived, that RCI officials had just taken all documents about of the plaintiff's cell, because they didn't know what might or might not be confidential, or related to the investigation. Id. at ¶34. The defendant reviewed the documents, and found the original copies of the letters between Ms. Baldwin and the plaintiff. Id. at ¶34; Dkt. No. 36-11. The defendant returned the remaining documents to the plaintiff's institution, along with a cover letter dated October 15, 2012, written on ATF letterhead.[4] Dkt. No. 35 at ¶35; Dkt. No. 39-1 at 28.

The defendant declares—again, under penalty of perjury—that, at the time he requested a search of the plaintiff's cell, he was not aware that the plaintiff had filed a John Doe petition against him. Id. at ¶27.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty

---

[4] The plaintiff makes much of the fact that the defendant, who is a Milwaukee police officer, used ATF letterhead. Because in 2011 the defendant had been deputized as a federal officer, however, he was entitled to use ATF letterhead. Id. at ¶54.

7

Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Retaliation

The First Amendment protects against retaliatory actions by government officials against individuals who are exercising their constitutional rights. Thayer v. Chiczewski, 705 F.3d 237, 251 (7th Cir. 2012). "To make out a prima facie case on summary judgment, [a] plaintiff[] must show that: (1) [he] engaged

8

in activity protected by the First Amendment; (2) [he] suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the [law enforcement officer's] decision." Id.

The plaintiff has provided the court with no evidence that his First Amendment activity was a motivating factor in the defendant's request for a search of the plaintiff's cell. The plaintiff asserted that the defendant asked for the search as a way of retaliating against the plaintiff because the plaintiff had requested an investigation into the defendant and other officers. The defendant, however, has declared under penalty of perjury that no one informed him that the plaintiff had filed a John Doe petition against him and that, at the time of the search, he had no knowledge that the plaintiff had filed such a petition against him. Dkt. No. 35 at ¶¶20, 27. The plaintiff disagrees, but has provided no evidence showing that the defendant had such knowledge.

Instead, the plaintiff argues that, "In deciding a motion for summary judgment, the court must accept as true Cannon's version of events . . . which mean[s] that the court must assume that the defendant retaliated against Cannon." Dkt. No. 54 at 9. The plaintiff misunderstands the standard at summary judgment. While it is true that the court must construe the *facts* in the light most favorable to the non-moving party, an assertion becomes a *fact* only when it is supported by evidence that would be admissible at trial. See Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000); Fed. R. Civ. Pro.

9

56(c)(1), (4). Conclusions, assumptions, opinions, and theories are not *facts*, and a party may not rely on them to create a genuine dispute of material fact. See Thornton v. Aerospace LP, 796 F.3d 757, 768-69 (7th Cir. 2015) ("surviving summary judgment requires evidence, not assumptions") (citing Sybron Transition Corp. v. Sec. Ins. Co. of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997)).

The plaintiff argues that the defendant's assertion that he did not know about the John Doe petition against him "just don't add up," dkt. no. 56 at ¶44, and that "someone" told the defendant about the John Doe investigation, id. at 55. The plaintiff has provided no evidence that he had any personal knowledge of what the defendant knew or when he knew it, and the plaintiff's unsupported opinions and beliefs to the contrary are, without more, insufficient to create a triable issue of fact.

Because there is no evidence that the defendant knew about the plaintiff's request for a John Doe investigation, that activity could not have been a motivating factor in the defendant's decision to request a search of the plaintiff's cell. For that reason, the plaintiff's First Amendment retaliation claim necessarily fails, and the court will grant the defendant's motion for summary judgment. The court also will deny the plaintiff's motion for summary judgment, for the same reason.

**III.    MOTION TO SUPPLEMENT PLEADINGS**

The defendant filed his motion for summary judgment on November 14, 2016. Dkt. No. 33. Things became a bit confusing after that—on December 1, 2016, the court received a document that the plaintiff may have intended to be his opposition brief, but because it was not clear, the clerk's office docketed it as a reply brief to his own motion for summary judgment. Dkt. No. 40. The defendant then filed a reply brief. Dkt. No. 49. The plaintiff asked the court to strike that brief, arguing that it was untimely. Dkt. No. 51. The court denied the motion to strike (concluding that the plaintiff was confused about the summary judgment procedure), but gave the plaintiff a deadline of January 20, 2017 to supplement his response, and gave the defendant fourteen days after that to file a reply. Dkt. No. 52 at 5. On January 23, 2017, the court received a series of documents from the plaintiff (dkt. nos. 53-56).

The plaintiff also filed his motion for summary judgment on November 14, 2016. Dkt. No. 39. The defendant filed his response on December 14, 2016. Dkt. No. 46. The court gave the plaintiff a deadline of January 20, 2017 by which to file a reply brief. Dkt. No. 52 at 5. The defendant filed that reply brief and supporting documents on February 6, 2017. Dkt. Nos. 58-60.

So—as of February 6, 2017, the parties had briefed their motions for summary judgment. The court took the case under advisement at that point. On June 5, 2017, however—four months *after* the parties had completed their briefing on the summary judgment motions—the plaintiff filed a document entitled "Notice of and Motion to Supplement Pleadings." Dkt. No. 62. He asks

the court to reinstate his Fourth Amendment claim in light of the Supreme Court's decision in Manuel v. City of Joliet, ___ U.S. ___, 137 S. Ct. 911 (March 21, 2017). Id. The respondent argues that the plaintiff was not in pretrial detention at the time his RCI cell was searched (he was serving the sentence that resulted from the criminal investigation in which the defendant was involved), and that Manuel (which dealt with unlawful pretrial detention, not searches) does not apply. Dkt. No. 63.

The court agrees that the plaintiff was not a pretrial detainee at the time his cell was searched. He was serving a prison sentence, and although he was in the RCI temporarily as a result of new charges having been brought against him, that fact does not convert him into a pretrial detainee. The court agrees that the plaintiff's case does not involve a challenge to pretrial detention (as Manuel did). Finally, the court notes that the motion indicates that the plaintiff would like to challenge the seizure of his legal files. It was not this defendant who seized the files—that was the RCI staff. This defendant ordered the plaintiff's files returned to him (other than the letters between the plaintiff and Ms. Baldwin). The court will deny the plaintiff's motion.

### III. CONCLUSION

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 39.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 33.

The court **DENIES** the plaintiff's motion to supplement pleadings. Dkt. No. 62.

The court **DISMISSES** the plaintiff's case. The court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 22nd day of June, 2017.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**